```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ELLEN LUNTS, and ALEXANDER LUNTS

                    Plaintiffs,          07-CV-6272T
v.
                                         DECISION
ROCHESTER CITY SCHOOL DISTRICT,          and ORDER
SUNY EMPIRE STATE COLLEGE,
STATE UNIVERSITY OF NEW YORK (SUNY)

                    Defendants.
_____
```

<u>INTRODUCTION</u>

Plaintiffs Ellen Lunts, and Alexander Lunts, proceeding <u>pro se</u>, bring this action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), claiming that the defendants Rochester City School District and SUNY Empire State College ("defendants") discriminated against Ellen Lunts ("Lunts" or "plaintiff") on the basis of her gender, race, and national origin.  Specifically, plaintiff, who was employed under a two-year renewable contract as an Assistant Professor with Empire State College, alleges that her contract was not renewed on grounds that she is female, Jewish, and is of foreign origin.  Plaintiff also alleges that she did not receive equal pay and was harassed because of her gender, race, and origin, and was retaliated against for complaining of discrimination.  Plaintiff's husband Alexander Lunts, who was not employed by the defendants, claims that he experienced physical and emotional pain as a result of the discrimination against his wife.

The defendants now move for summary judgment claiming that plaintiffs have failed to establish any facts suggesting that Lunts was discriminated against in any manner. Defendants also contend that plaintiff Alexander Lunts has failed to state a cause of action against the defendants. For the reasons set forth below, the defendants' motions are granted.

## BACKGROUND

Plaintiff Ellen Lunts was born in Russia, and according to her Complaint, graduated with highest honors from the Pedagogical University of Omsk. Upon graduation, plaintiff began a career in Russia teaching math and science. She claims that she was denied entry into a PhD program in Russia because of her Jewish ancestry, and therefore, moved to the United States to pursue such a degree. Plaintiff alleges that she attained a second Master's degree and a PhD degree at the University of Rochester in "record short time."

In August 2004, Lunts signed an employment contract with defendant Empire State College ("Empire State" or "the College")) to become an Assistant Professor/Mentor in the Masters in Teaching Program operated by Empire State. Under the terms of the contract, Lunts was appointed for a two year term, at a starting salary of $52,000.00, with possible continuing appointments, and was considered to be on a tenure track. The contract specifically provided that although the position was considered to be on a

tenure track, there was no expectation or guarantee that Lunts would be reappointed.

In her position as an Assistant Professor, plaintiff was assigned to teach and mentor students who were beginning a second career in teaching. These students were typically older students who did not have college degrees in Education. Some of the plaintiff's students were student-teachers in the Rochester City School District (the "School District" or "City School District"). These students were part of a collaborative program between Empire State College and the School District whereby participants who completed the program could receive a Transitional Teaching Certificate. In her role as a Mentor, Lunts taught classes and gave assignments to her students, and also, on occasion, observed the students as they taught their regular classes in School District schools.

One of the students assigned to Lunts was Carol Fries ("Fries"). Initially, Fries and Lunts enjoyed an amicable relationship, and Lunts often praised Fries' work, and awarded Fries good grades in the classes Fries took from Lunts. In October, 2005, however, after Lunts completed an observation session of Fries teaching in Fries' classroom in the City School District, their relationship suffered a severe and almost immediate breakdown. According to Fries, Lunts' improperly introduced herself to Fries' students as Fries' supervisor, an action that

3

Fries complained undermined her authority in the class room. Fries contends that when classroom observations occurred, observers were supposed to enter and leave the classroom with as little disruption as possible, and were not to announce themselves or their purpose for being there. Lunts contends that she did nothing wrong in identifying herself.

In the aftermath of the observation session, and as a result of corrections to Fries' written work suggested by Lunts, Fries sent an email to Lunts explaining in terse and unflattering language that because Lunts was a non-native speaker of English, Fries did not believe that Lunts was qualified to instruct her on the use of the English language. Fries also expressed regret at previously accepting Lunts' instruction, and claimed that she should have stopped Lunts from attempting to instruct her from the very beginning of their relationship. Fries further suggested that Lunts was not qualified to serve as a mentor to teachers teaching in an urban school system because Lunts lacked experience in such settings.

Fries complained of Lunts' behavior to Lunts' supervisor at Empire State College, and also to Marie Costanza, ("Costanza") the Director of the Rochester City School District's Career in Teaching Program. The Career in Teaching Program oversaw, on behalf of the School District, the collaboration with the Empire State College Masters in Teaching program. As a result of her complaint to

4

Empire State, Fries was assigned to another Empire State Assistant Professor.  In response to Fries Complaint to the City School District, Costanza, along with Mitch Adams, a School District Human Resources Manager, in November, 2005, held a meeting with Lunts, after which Costanza informed Empire State and Lunts that Lunts was no longer welcome on School District property.  Because Lunts was no longer allowed to observe her students while they were teaching their classes, her students were assigned to other Empire State Assistant Professors.

At approximately the same time, Lunts' contract was up for renewal.  Although two academic panels recommended that her contract be renewed, Empire State declined to renew her contract, and her employment with Empire State concluded on August 31, 2006. On August 22, 2006, Lunts filed an administrative complaint of discrimination with the EEOC complaining that she had been retaliated against by Empire State and the School District because she complained to her supervisor at Empire State that a City School District student may have been mistreated by Carol Fries, and because she complained that Empire State failed to follow Union Guidelines with respect to the failure of Empire State to reappoint her.  She also claimed that she was subjected to unequal pay, and made several other accusations in her 15 page typed, single spaced attachment to her administrative complaint.  Upon dismissal of plaintiff's administrative complaint, she filed a 46 page Complaint

before this Court alleging, on behalf of herself and her husband, violations of Title VII of the Civil Rights Act of 1964.

DISCUSSION

I.   The Defendants' Motions for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  When considering a motion for summary judgment, all genuinely disputed facts must be resolved in favor of the party against whom summary judgment is sought.  Scott v. Harris, 550 U.S. 372, 380 (2007).  If, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party, a grant of summary judgment is appropriate.  Scott, 550 U.S. at 380 (citing Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-587 (1986)).

Defendant Rochester City School District moves for summary judgment against the plaintiffs on grounds that plaintiff Alexander Lunts has failed to state a claim upon which relief can be granted, and plaintiff Ellen Lunts has failed to state a cause of action against the School District because the School District is not her employer, and therefore may not be held liable under for employment

discrimination. Defendant School District further contends that even if the School District could be considered her employer, plaintiff has failed to allege that she was discriminated against.

Defendant Empire State moves for summary judgment against the plaintiffs on grounds that plaintiff Alexander Lunts has failed to state a claim upon which relief can be granted, and plaintiff Ellen Lunts has failed to establish that she was discriminated against.

II.  Claims on behalf of Alexander Lunts are dismissed

The Plaintiffs bring this action for employment discrimination claiming that Ellen Lunts was discriminated against by the defendants, and that the alleged discrimination against Ellen Lunts constituted discrimination against Alexander Lunts (who was not an employee of either the school district or Empire State) because "ELLEN and ALEXANDER LUNTS have had a strong union and they consider any adverse action against one of them as an action against both members."  Complaint at ¶ 78.  Indeed, plaintiffs allege that Alexander Lunts participated in many meetings with School District and Empire State personnel, that he was "outraged" at the defendants' behavior, and suffered emotional and physical pain and suffering as a result of the defendants' actions.

While plaintiff Alexander Lunts may very well have felt aggrieved at the alleged actions of the defendants, spouses of alleged victims of discrimination are not entitled to sue for damages under Title VII.  Bigsby v. Runyon, 950 F.Supp. 761, 767

(N.D. Miss. E. Div., 1996); Patton v. United Parcel Service, Inc., 910 F.Supp. 1250, 1278 (S.D. Tex., 1995). Nor may a spouse claim loss of consortium under Title VII. Stoczynski v. Verizon Commc'ns, Inc., 2006 WL 3030781, at *3 (W.D.N.Y. Oct.20, 2006)(Arcara, J.) ("It is established within the Second Circuit ... that a consortium claim can not be predicated on either a Title VII or New York HRL claim.") Because Alexander Lunts was not an employee of the defendants, I find that he has failed to state a cause of action for employment discrimination against the defendants, and I therefore grant the defendants' motions for summary judgment against plaintiff Alexander Lunts.

> III. Plaintiff has failed to state a claim against the Rochester City School District.

Plaintiff alleges that the School District discriminated against her because it perceived that she lacked English language competency, and retaliated against her for making claims to her supervisor at Empire State that Carol Fries may have mistreated a Rochester City School District Student. The School District alleges that it cannot be held liable for employment discrimination against Lunts because the School District is not Lunts' employer.

Title VII of the Civil Rights Act of 1964 prohibits discrimination based on race, color, religion, sex or national origin by an employer, employment agency, or labor organization. 42 U.S.C. § 2000e-2. (Emphasis added)  In determining whether or not a party is an "employer" for purposes of liability under Title

VII, courts consider: "whether the party had authority to hire or fire the plaintiff, supervise her work or conditions of employment, determine her rate or method of pay, or maintain records of her employment." Bordeau v. Housing Works, Inc., 2001 U.S. Dist. Lexis 5313 at *13 (S.D.N.Y. 2001)(citing Kern v. City of Rochester, 93 F.3d 38, 45 (2d Cir.1996)).  In the instant case, the School District has set forth evidence that it: (1) had no authority to hire or fire the plaintiff; (2) did not supervise her work or conditions of employment; (3) did not determine her rate or method of pay; and (4) did not maintain records of her employment.  Based on this evidence, I find that the School District was not the plaintiff's employer.

Nor do I find that the School District can be considered a co-employer or joint employer.  An employer may be considered a joint or co-employer where there is evidence that the putative employer "had immediate control over the other [entity]'s employees." NLRB v. Solid Waste Services, Inc., 38 F.3d 93, 94 (2nd Cir. 1994).  To establish a "joint employer" relationship between two entities, a plaintiff must allege "commonality of hiring, firing, discipline, pay, insurance, records, and supervision . . . ." Lima v, Addeco, 634 F. Supp. 2d 394, 399-400 (S.D.N.Y. 2009), aff'd 375 Fed. Appx. 54 (2d Cir. 2010).

In the instant case, there is no evidence that the Rochester City School District shared any commonality of hiring, firing,

9

discipline, pay, insurance, record keeping, or supervision with Empire State. It is undisputed that Empire State, without any input from the Rochester City School District, hired Lunts, paid her, established her duties, provided her insurance, maintained her employment records, and determined whether or not she would be reappointed. Because there is no evidence that the City School District played any role in Lunts' employment, I find that she has failed to establish that the School District was her joint or co-employee.

Lunts argues, however, that the School District barred her from observing students in Rochester City School District Classrooms, and thus impared her ability to perform her job functions. By barring the plaintiff from school property, however, the School District did not become plaintiff's employer, or co-employer. The School District has the authority to regulate who may or may not be on school property, and there is no evidence that the School District barred plaintiff from its property based on her gender, national origin, or ethnicity. By exercising that authority, and preventing the plaintiff from entering school property, the School District did not assume any authority over the plaintiff's terms or conditions of employment. Accordingly, the School District's decision to bar plaintiff from school property does not render the school liable for employment discrimination.

Although not addressed by the parties, the court notes that there is an alternative theory of liability under which the plaintiff may have alleged that the School District could be liable for employment discrimination despite the fact that the School District is not the plaintiff's employer. Some courts have held that where a non-employer discriminates against an employee, and the discrimination has the effect of restricting the employee's access to employment, the non-employer may be held liable for employment discrimination. See Sibley Memorial Hospital v. Wilson, 488 F.2d 1338 (C.A.D.C., 1973). The Second Circuit Court of Appeals, however, has rejected such an interpretation of Title VII on grounds that Title VII explicitly provides that liability may be imposed only on "employers", "employment agencies", and "labor organizations." See Gulino v. New York State Educ. Dept., 460 F.3d 361, 374 (2nd Cir., 2006)("An expansive definition of "employer" contravenes Supreme Court precedent and fundamental canons of statutory interpretation.)(Emphasis added). Accordingly, because the School District was not plaintiff's employer, I find that it cannot be held liable for alleged discrimination under Title VII.

### IV. Plaintiff has failed to state a cause of action for discrimination against Empire State College

Plaintiff alleges that her employment contract was not renewed because she is a female, is Russian, and is of Jewish heritage. To establish a *prima facie* case of employment discrimination under Title VII, a plaintiff must show (1) that she belonged to a

protected class; (2) that she was qualified for the position she held; (3) that she suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination. See Shumway v. United Parcel Service, Inc., 118 F.3d 60, 63 (2nd Cir. 1997).

In the instant case, assuming arguendo that the plaintiff has established that she is a member of a protected class, was qualified for her position, and suffered an adverse employment action, plaintiff has failed to establish that her contract was not renewed under circumstances giving rise to an inference of discrimination. Indeed, plaintiff has offered no evidence that she was discriminated against on any basis by any either Empire State College or any employee or representative of the college. The Plaintiffs in this action, although proceeding pro se, had ample opportunity to investigate whether or not Empire State engaged in any discriminatory behavior or act, and indeed the plaintiffs conducted thorough document discovery and examined several witnesses at considerable length. Plaintiffs submitted copies of the videotaped depositions, and because the defendants did not submit the entire deposition transcripts of some of the witnesses, the court reviewed in their entirety the videotaped depositions conducted by the Lunts' of witnesses Carol Fries and Marie Costanza, and reviewed deposition transcripts and portions of the videotaped depositions of other witnesses. Additionally, the court

reviewed all of the documentary evidence submitted by the plaintiffs in electronic format. Despite this thorough review, the Court cannot ascertain any evidence of discriminatory activity on the part of any of the defendants. Although the plaintiffs complain in conclusory fashion that every adverse action taken against them was the result of discrimination, they provide absolutely no evidence that any defendant or representative or employee of any defendant acted with discriminatory motive or intent against Lunts. And no matter how sincere, "[a]n employee's own subjective belief of race discrimination . . . cannot serve as the basis for judicial relief." Patton v. United Parcel Service, Inc., 910 F.Supp. 1250, 1263 (S.D.Tex., 1995).

In this case, rather than present evidence of alleged racial discrimination engaged in by the defendants, the plaintiffs presented evidence that seemingly attempted to prove that: (1) Lunts was a very good and competent Assistant Professor; (2) she did nothing wrong when she observed Carol Fries teaching in her class room; (3) she did not in fact violate or encourage the violation of any confidentiality policy implemented by the Rochester City School District, and was thus wrongfully barred from School District property and (4) was subjected to improper procedures with respect to Empire State's refusal to reappoint her. However, even if plaintiff could prove all of these points, she has failed to establish that any adverse or negative action taken

13

against her was the result of discrimination. In other words, even if the plaintiff could prove that the School District made a bad decision when it decided to prohibit her from entering school property, and even if it made the decision based on a misunderstanding of the relevant facts, such proof does not establish that discrimination took place, because it fails to establish that the actions were motivated by a desire to discriminate against the plaintiff on the basis of her gender, religion, or origin. An "employer need not prove ... that it made the wisest choice, but only that the reasons for the decision were nondiscriminatory." Davis v. State Univ. of N.Y., 802 F.2d 638, 641 (2d Cir.1986). Similarly, even if the plaintiff could prove that Empire State failed to comply with all administrative requirements when it declined to renew plaintiff's teaching contract, such proof does not establish that Empire State discriminated against Lunts on the basis of her gender, national origin, or religion. Because the plaintiffs in this case have failed to present any evidence that any defendant discriminated against the plaintiff on any basis, I find that plaintiff has failed to state a prima facie case of discrimination.

The closest plaintiffs come to presenting evidence of discrimination is the evidence they have submitted demonstrating that Carol Fries, plaintiff's student, told the plaintiff that she was not competent to critique her English ability because the

14

plaintiff herself was a non-native speaker of English. However, even if this single incident could be considered discriminatory, the comment came from plaintiff's student, not either of the defendants. Even if Fries' comment could be imputed to the School District, the School District is not plaintiff's employer, and thus cannot be held liable for employment discrimination. Nor can the comment made by Fries, who was a student of Empire State, be imputed to Empire State.

Just as plaintiff's discrimination claims are without evidentiary support, her claims of retaliation are without any evidentiary foundation. Plaintiff alleges that she was retaliated against because she filed a charge of discrimination with the EEOC. The discrimination charge, however, was filed in August, 2006, long after Empire State notified plaintiff of its decision not to renew her contract.[1] Because the allegedly retaliatory act took place prior to her filing of the administrative complaint, plaintiff cannot establish that the filing of the Complaint resulted in her contract not being renewed. In her EEOC complaint, plaintiff alleges that she was retaliated against for complaining that Carol Fries had mistreated a student by denying the student lunch. Such a claim, however, does not allege that Empire State retaliated against Lunch on the basis of her gender, national origin, or religion.

---

[1] Plaintiff was notified of the Schools decision not to renew her contract in December, 2005.

15

    IV.  Plaintiff has failed to State a Cause of Action for unequal pay.

Plaintiff alleges that male Assistant Professors at Empire State were paid more than female Assistant Professors.  In support of this claim, plaintiff alleges that a male Assistant Professor who was hired at the same time that she was hired was given an initial salary that was $7,000 a year higher than plaintiffs, and also received merit increases whereas plaintiff was not given such increases.  The Defendant contends that the male professor received a higher initial salary because he was significantly more experienced than the plaintiff, and argues that the male properly received merit increases based on his work.  Defendant further alleges that when considering all of the Assistant Professors in plaintiff's depart, there is no evidence of wage discrimination.

Claims for unequal pay may be brought under Title VII, as the plaintiff has in this case, or the Equal Pay Act of 1963 , and actions brought under either law are subject to the same analytical standards.  <u>Briggs v. Rochester Aluminum Smelting</u>, 2010 WL 3663545 *4 (W.D.N.Y., September 14, 2010)(Telesca, J.); <u>Washington County v. Gunther</u>, 452 U.S. 161 (1981).

To establish a prima facie case of wage discrimination, "a plaintiff must demonstrate that 'I) the employer pays different wages to employees of the opposite sex; ii) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and iii) the jobs are performed under similar

working conditions.'" Ryduchowski v. Port Authority of New York and New Jersey, 203 F.3d 135, 142 (2nd Cir., 2000)(quoting Belfi v. Prendergast, 191 F.3d 129, 135 (2d Cir.1999).

In the instant case, I find that plaintiff has failed to establish that Empire State discriminated between men and women with respect to their wages. Empire State has provided unrebutted evidence that of the nine full-time Assistant Professors, in the plaintiff's department, only two of whom were males, a female Assistant Professor was the highest paid Assistant Professor in the department, and three of the top five wage earners were females. Although plaintiff was the lowest paid full-time Assistant Professor in the department, there is no evidence that Empire State discriminated against females with respect to wages it paid its male and female Assistant Professors.

## CONCLUSION

For the reasons set forth above, I grant defendants' motion for summary judgment, and plaintiffs' complaint is dismissed with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

S/ Michael A. Telesca
_____
MICHAEL A. TELESCA
United States District Judge

Dated:    Rochester, New York
          September 13, 2011